The next case for argument is Friends of the Inui v. United States Forest Service. This is a case of Friends of the Inui v. United States Forest Service. This is a case of Friends of the Inui v. United States Forest Service. Good morning, Your Honors. Roger Flynn for Friends of the Inui. I have 20 minutes. I'd like to save about eight minutes or so for rebuttal since we'll be responding to two parties. I'd like to start by addressing the Court's question to the parties last week. What is a proposed action under the U.S. Forest Service Categorical Exclusion, or CE, regulations? The Court asked it's at 36 CFR 220.6a. The same language also appears at 220.6c. The language is in the singular. The proposed action must fit within a CE category. So the question is here, what's the proposed action? It's Core Mining's Exploratory and Reclamation Plan. Always has been. One project. Wait, I'm sorry. Are you giving us a definition of proposed action? Well, in this case, well, we think it's singular as a rule. But in this case, it's pretty clear it's one project. It was always one project. Okay. You're not giving us a legal definition. You're going right into the facts. Right. Yeah, you know, we looked a lot over the last week or so. It's not defined in the Categorical Exclusion. They've argued, well, action could mean actions, plural, but there's no real, I don't think, a definition out there in the case law on CEs. Okay. So what you do then is you look at the facts of this case in the administrative record, and it's always been one project. Well, then, that's a different word. Right. We're talking about proposed action versus project. Okay. Well, I think I would submit that it's one action here. It's a mineral exploration and reclamation project. It's all one. It's in the core plan of operations, which we had submitted. It's in our ER. And it includes, this is critical, it includes all of the reclamation that was in the plan. And it always included the reclamation, both the initial reclamation done within the first year, but also the multiyear reclamation that occurs in future years. And it was always that. It was always one project, one action, if you will. And then, all of a sudden, when the decision came out, for the first time, anyone, except, I guess, CORE and maybe the internal staff of the agency, all of a sudden now there's a new project, a new action, if you will. They'll say it's one project, the post-project habitat restoration project. Well, what's that? It's actually the reclamation project. It never changed. The reclamation plan in the initial project that was submitted to the public, California Fish and Wildlife Department severely criticized it, Mono County, Mammoth Lakes. It was always one project. And that's the problem with their law here. They basically split off in order to avoid doing an EA. So, can I ask, in the decision memo on page 3, which is ER 92, when describing the reclamation efforts, the Forest Service says, because these activities are not in support of the mining activities, we're using an additional C category to cover these activities. So, to me, that suggests that they are breaking it into two different activities. Well, yes, they did, Your Honor. But that is under the one of the fundamental problems here is CEA says it has to be initial or mineral investigation and the incidental support activities. What are those? Well, it's going to be some of the pre-stuff, clearing the roads, getting it ready, let's say. But it's also reclamation. As we pointed out, in the agency, then so. Let me ask a question. I agree that the final decision memo says these activities are not required to support the mineral exploration activities. But if you look at that is in the August, I think it was August 2021 version of the, well, it's in the final decision memo. But if you look at version 2, the draft of the decision memo dated July 16, 2021, or that's when the Aaron Noster forwards it. He says, I added a new CE category and an explanation. So, see if you think it's logical. I'm sending it to our attorneys and NEPA people today to look at that section so they may ask for some changes if they don't like it. And in that draft of the decision memo, version 2, it says, although restoration activities do fall under support activities necessary for mineral exploration. So, you know, it seems like the Forest Service changed its mind about whether this was the restoration was a support activity necessary for mineral exploration after they talked to lawyers about, hey, how do we get around NEPA? I would also just want to ask you, if I look at the regulations governing mineral operations, they define operations as all functions, work, and activities in connection with prospecting, exploration, development, mining, or processing of mineral resources and all land uses reasonably incident thereto. And the Forest Service mandates that all operations shall be conducted to minimize adverse environmental impacts on National Forest Service resources. And this directive requires operations to fulfill several environment protection requirements, and one of the requirements is reclamation. Yes, Your Honor. Sorry, continue, I thought. Is it right that to do an operation for mineral exploration, it has to include reclamation under Regulations 228? Exactly 100% correct, Your Honor. And you pointed out the agency staff said that all the post, all the later year reclamation is actually part of the project. That was stricken when they issued the decision came out a couple of months later. Are there different types of reclamation, though? Aren't there immediate reclamation that you have to do things immediately, short-term, and then there's a longer-term reclamation? Right, that's exactly what's going on here. Right, so why couldn't the immediate reclamation be part of the mining incidental support, and then the longer-term reclamation is a different action? This is the first time they've ever tried to argue that, Your Honor. I think Judge Koh had it exactly on point. So what are incidental support activities? You look to the regulations, the mining regulations. All functions, work, and activities in connection with exploration and all uses reasonably incident thereto. You can't approve a mining project without successful reclamation. That includes the first year. You get the seeds in, and then they recognize two, three, four years later, we've got to check to see if it works, and if it's not working, we're going to go in, we're going to revegetate and stuff like that. In fact, speaking of the decision itself, at page 2, ER 91, there's a quote from the decision. The decision admits that, quote, post-exploration habitat restoration activities that may continue past one year are, quote, needed for satisfactory reclamation. They have to do this. And we support that. The district court took their argument that we're somehow thinking, oh, you've got to cut off reclamation after the first year. Environmental and conservation groups, local groups that care about the sage grouse and this environment. It's a spectacular environment on the east side of the Sierras. We're not saying cut off the reclamation after the first year, but if you're going to use CE8, you have to have it all done. And so that's the problem here. They didn't. Can I ask, do we have to defer to that as a factual matter, that statement, because these activities are not in support of the mining activities, we're using an additional CE category to cover these activities? Is that a factual question that we have to defer to, or is that a legal question that we could, well, putting aside our deference and things of that nature? Right. Well, you don't defer when they violate the regulations. And essentially what there's – Yeah, but it seems like a factual question whether or not these are two activities or one activity. Well, actually, we pointed out in our brief, if the federal government's response brief at page 53 said, quote, there is no independent habitat restoration project, U.S. brief at 53. There isn't. It's project again, not activity. Right. Right. I don't think particularly we want to get caught on what's an action or a project. It's one approval. They approve one thing, which includes multiple U.S. things. Let me ask you a question. To qualify for categorical exclusion, you have to have no significant effects. And if we just look at mineral exploration alone without any reclamation, saying let's give that this reclamation or habitation restoration project is totally separate, how could they have even qualified then for a CE, a categorical exclusion? Because if I look at their reclamation bond estimate, they say once the drilling exploration has ceased, they have to engage in reclamation activities to bring the land back to its natural state. So they understood that this was their requirement in order to do the drilling, or the exclamation. So can you just explain how can you qualify for a categorical exclusion without the reclamation? Well, it depends on the fact. Just look at the. Go ahead. Right. It depends on the fact. Some areas of the West, I think reclamation might be pretty easy, and you can get it done in a year. Maybe the drilling is only going to take a month. We deal with reclamation drilling projects that are much less extensive than this, and you can get it done, the whole thing, in a year. But, you know, this issue came up. They tried this before, Your Honor, in the Defender's case, and said that, oh, it's post-project, and Judge Marquez in the Defender's case from 2015 just said, no, it's part of one project. You can't just cut it in half. I mean, it's black-letter NEPA law that you can't take a project and divide it up into little bits and say, well, that's not significant, that's not significant, that's not significant. Hey, go to. And, Judge Koh, just to clarify, the test is whether it's uncertain, whether there may be significant impacts to do a CE. It's not that it may significantly affect the environment. That's the test to do an EIS. To do a CE, it's a much lower test for us to do. Separate proposed actions here, what was the Forest Service required to do? Say that again? Okay, let's say there were two separate proposed actions here, one for the exploration for minerals and one for the habitat restoration. Let's say there were two separate projects, two separate proposed actions for purposes of a categorical exclusion analysis. What was the Forest Service then required to do as to each proposed action? Did they have to consider extraordinary circumstances? Did they have to list it on the schedule of proposed actions? What would have been required of the Forest Service if there were, in fact, two separate proposed actions? Right. They would have first told the public that there were two projects going on, and here there was only one. And what they're essentially doing is leaving out the phrase and incidental support activities and saying, well, that's just the first year. It doesn't make sense. You can't have reclamation for the first year as an incidental support activity, and then the next spring additional reclamation is somehow this new project that no one's ever seen before. They've never tried this before. Why is that not true? Like immediate reclamation means cleaning up the mess, planting over the holes that you've dug, but then long-term reclamation can be a different activity. It's part of the same project, I agree, but different activity. Well, it is definitely maybe different trucks, maybe different personnel. The biologist is out there with the reseeding. Yes, but it's all one project. Well, bottom line here, and I want to save some time here for rebuttal, is they could not, under the mining regulations, and, Judge Koh, maybe this goes to your questioning, they cannot approve a drilling project unless they can ensure successful reclamation. In fact, the definition of operations and the definition of successful reclamation includes the rehabilitation of wildlife habitat. That's in 36 CFR 228.8. It's all one project. We mentioned this. Originally they were going to do an EA. We pointed that out. Then, working with the company, said, okay, we're going to fit this all in one CE. They open it up for comment, and we say, hey, that doesn't fit under the Defender's case. You can't do that. And then ‑‑ Can I ask you a related question real quick? Sure. It's not an issue, but can you assure us that you have Article III standing to bring this claim? What is the basis for your Article III? Oh, yes, Your Honor. We have submitted extensive declarations at the summary judgment stage, as we're required to do. Our clients, some live out there, and members of the group, especially the sage-grouse, it is a wonderful bird. And to see these leks that are going ‑‑ the trucks are going to be going right by the leks. There's extensive damage to the leks here, Your Honor. But I'd be happy to have additional briefing. But we briefed that at the summary, and no one has challenged that to date. Okay. And it looks like I have about six and a half to go. So if there's any further questions, I'll save the rest for rebuttal. Thank you, Counsel. Okay. Thank you very much. May it please the Court. My name is Ezekiel Peterson, here on behalf of the United States Forest Service. I'll be taking 15 minutes of time, and Counsel for the Intervenors, Core Mining, will be taking the remaining five. My plan is to start by addressing the issue of whether the Forest Service may appropriately use two categorical exclusions to approve one single project under NEPA, before briefly touching on the cumulative impacts question. Counsel for Intervenors will be addressing the de minimis nature of this project, as well as touching on the extraordinary circumstances question. This is a case in which the Forest Service complied with NEPA when it approved a project for small‑scale exploratory drilling, along with corresponding monitoring of revegetation. I think it's important context in this case that the exploratory drilling component of this project is only lasting 50 to 170 days from when the project actually begins. The only portion of the project that lasts beyond that is the monitoring of revegetation. But you would agree that the proposed action is the project. There's no meaningful difference between the project, which includes Phase I and Phase II, and the proposed action. They're one and the same. Yes. We agree with that point. The proposed action under 36220.6A is the entire project here. That's very important. So you think it's one proposed project for both phases, just to be clear? Yes, Your Honor. This is one proposed action, one project under the mining regulations, which means it's one proposed action under the NEPA regulations. We believe that the proposed action is the entire project that's being considered that's then consummated in a record of decision or a decision memo. The gap between our position and plaintiff's position is that the Forest Service reads its regulations to say that the Forest Service can apply multiple categorical exclusions to one proposed action. And that's the best reading of the regulation because it matches with the definition and the purpose of the categorical exclusions. It's important here that the Forest Service regulations can't be read on their own. They have to be read with reference to the White House Council on Environmental Quality NEPA regulations. That's because those CEQ regulations are the regulations that tell agencies how to implement NEPA. They tell agencies what a categorical exclusion is and that the agencies must adopt categorical exclusions. And those Council on Environmental Quality regulations explain that categorical exclusions do not have an individual nor cumulative significant effect on the environment. So ultimately, it doesn't matter whether when an agency is considering activities that fall within two different categorical exclusions. It doesn't matter whether the agency approves that in one decision memo or in two decision memos. That's the interpretation that the district court reached, and that's the correct one. As the district court put it, zero plus zero is zero. So here, this is one proposed action under the mining regulations. And I think what plaintiffs are trying to do here is merge two different regulatory regimes. They're trying to say that the mining regulations control the definition of categorical exclusions under the Forest Service's NEPA regulations. Really what they're trying to say is that, you know, under 2A, I mean, A2 of 22.6, it says the proposed action is within a category listed in D&E. They get around that. Well, Your Honor, we don't believe that that use of the singular article A is outcome determinative in this case because it is a principle of interpretation that the singular article can be read to include plurals, like this court said in Schott v. Commissioner for Internal Revenue that we cite in our brief. And we think that that's the only appropriate reading of this regulation when it's read in conjunction with the CEQ regulations that say that a categorical exclusion is a category of action that does not have a cumulative or individual significant effect on the environment. So when reading all those together, that's the appropriate reading of this regulation. So how would you want it to say? How do you think what it means when it says A? Usually in a normal course, you say A means one. How do you think it should be read to take into account what you're saying? So here's the framework that the Forest Service must follow when determining whether or not a categorical exclusion is appropriate or multiple categorical exclusions are appropriate. It asks, first, whether the activities in the project fall within their selected categorical exclusions, and, second, if there's any extraordinary circumstances that would preclude the use of a categorical exclusion. I'm talking contextually. I still don't see how you could square taking a proposed action within a category and say that it could fit within multiple categories to justify it. I think it's because that singular Article A can be read to include plurals. How does that even work in plural? The proposed action is within categories listed in? Yes, Your Honor, within categories listed in 220.6 D and E. And so the Forest Service asks whether the— Why wouldn't your reading, as you just described, swallow the rule, be the exception that swallows the rule? The District Court sort of set forth a hypothetical where, you know, there was all of this sort of attaching of multiple different sections that by themselves wouldn't qualify under 1C, but together you could say, yes, putting all these together, now we can avoid having to do an EA or EIS. Why wouldn't that just end up being the norm and have the exception swallow the rule? Because of the second part of that test, Your Honor, the extraordinary circumstances part of that test. I think it's important to note that that part of the test, that analysis of extraordinary circumstances, isn't toothless. Basically ignore the plain language of all of the CEs on their face and only look to the extraordinary circumstances language. No, Your Honor. We're not ignoring the definition, the plain language of the definition of the CEs, and we're not ignoring the fact that many of the CEs are defined in terms of activities rather than individual actions. And the extraordinary circumstances analysis always functions as a safety relief valve in every single case to ensure that when two categorical exclusions are applied together, there's not some sort of overlapping effects or synergistic effects that then take those categorical exclusions and make them rise into the level of significant environmental effects. If that did happen, then extraordinary circumstances would kick in, the safety relief valve would kick in, and it would be inappropriate to apply a categorical exclusion. I think it's very important here that the Forest Service is not attempting to make some sort of fraudulent end run around any temporal or geographic restrictions in a categorical exclusion. Can you address how 22.6A1, in that, you know, the right above the one we're talking about, it says prose actions within one of the categories established by the Secretary. Right? So clearly in A1 they're saying it has to be one. Yes. Yes, Your Honor. Yeah, go ahead. That's different language than is in A2. Correct. It suggests, at least from that, they're talking about one category and no more. Then why would it be different under A2? Your Honor, I'm not sure about the exact categorical exclusions that apply under A1, but under A2, looking at the definitions from the NEPA regulations and the fact that it uses different language, I think it's perfectly appropriate to apply multiple categorical exclusions to a single prosecution. There's an explanation for the different language because it refers to two separate subsections, and so it's just clarifying that it has to be within one of those two subsections. So it just seems as a contextual matter that the fact that A1 requires one category and then, you know, A2 should somewhat be parallel, wouldn't you suspect? No, Your Honor, and I think that's because, again, just going back to the definition of the categorical exclusions, these are actions that do not have a significant individually or cumulatively. Isn't that what happens in A1-2? I think that's what those are about as well. Yes, Your Honor. So I think it's possible that that subsection should be read the same way here because when an agency— Well, it says one. You can't read it that way. You can't say two in A1. Yes. I'm sorry. I know that's confusing, but— Yeah. I think just all of this has to flow from the definition of a categorical exclusion, and the fact that a categorical exclusion does not have a significant effect on the environment means that the agency can apply multiple categorical exclusions in a single decision memo, and so long as there's not some sort of overlapping effect going on, so long as there's not some sort of project activities within both of those categorical exclusions— Can you cite any case from our circuit where that has been permitted, where the Forest Service has, in fact, done that and it's been upheld by this court? Yes, Your Honor. In Native Ecosystems Council v. Tidwell, the Forest Service was considering a project that would both harvest live trees under categorical exclusion 12 and also salvage dead trees under— That's an unpublished decision, so it's not precedent, correct? It is an unpublished decision. And the decision was one sentence. It didn't have any analysis, correct? That portion of the decision, yes, was one sentence. Can we go—I still am troubled by the language, the mere presence of one or more of these resource conditions does not preclude use of a categorical exclusion. I guess I'm—I still have difficulty seeing how that sentence says, when there's multiple, it doesn't preclude the use of multiple. That's just not what that sentence says. I'm just having difficulty understanding how, with all of this singular language throughout this regulation, the Forest Service is continuing to say, oh, it's multiple. And some of these categories would be inconsistent, wouldn't you agree? So under your reading, if, you know, multiple categorical exclusions can apply the same proposed action, how are we to understand that for interpreting this regulation, if some of these would be inconsistent with each other, some of these categorical exclusions? Would we not consider that as to whether you can stack multiple exclusions? If the Forest Service were attempting to stack two inconsistent categorical exclusions or make some sort of end run around a temporal or geographic restriction in a categorical exclusion by applying multiple categorical exclusions, then that wouldn't be permissible under our reading of the regulation because the extraordinary circumstances analysis would kick in and the project would rise into the level of significance. That's clearly not what's happening. But let's look at what's happening here. The first document from the Mammoth Ranger Station, July 28, 2020, says our initial review of the plan of operations indicates that an environmental assessment will need to be completed for this project, correct? That was what your initial review determined, correct? That was the initial review, I believe, prior to the scoping process. Right. And then if you look at the July 16, 2021 version of the decision memo, it explicitly says the restoration activities do fall under support activities necessary for mineral exploration. Then you send it to the lawyers, and then the final decision memo then completely reverses on that point and now says, well, the activities aren't required to support the mineral exploration activities. Why isn't this an end-run around NEPA's requirements? Well, because looking at the two categorical exclusions together, it's clear that there's no sort of temporal or geographical restriction that's being evaded. And the Forest Service, this court affords significant deference to the Forest Service when it reviews the agency's decision to reasonably to apply a categorical exclusion to a certain set of activities. That's reviewed under the standard of only whether the agency reasonably determined that a particular activity is encompassed within the scope of the categorical exclusion from Mountain Communities for Fire Safety v. Elliott. So I think it was perfectly reasonable here for the Forest Service to end up, in its decision memo at 2ER92, saying that these ongoing monitoring activities, which really consist of someone driving a pickup truck out to this site and ensuring that the revegetation is going okay, perhaps spreading some more seeds or planting some more shrubs, it was perfectly reasonable for the Forest Service to determine that that was not part of the incidental support activities to the geophysical investigation. But if you really thought it wasn't incidental to the mining exploration, then why didn't you discuss it in your original scoping letter? Why didn't you list it in your schedule of proposed actions? If you really didn't think it was incidental. Well, I think we need to review this decision based on the rationale of the Forest Service in its final decision memo. And the Forest Service uses the scoping process to determine what sort of NEPA analysis is appropriate. So it collects all the information from all the parties, including its own scientists and members of the public, and then it determines what level of NEPA analysis is appropriate. And what it landed on is that the monitoring activities were not in incidental support of the geophysical investigations. And I think that's a reasonable conclusion that this court should uphold. That's why I just don't understand why you don't say they're just two different proposed actions, but that's your call. Can I ask two quick questions? Of course. One, are you relying on our deference in your interpretation of 220.6A2? We're not asking or we didn't ask for our deference, and that's because we don't think that the Forest Service has set out this official interpretation of the regulation in the manner that would be required under Kaiser. But we do think our reading of the regulation is the correct one, and it is the Forest Service's regulation. And then, two, are there any other circuits that have adopted this reading of that? You mentioned Tidwell, Treadwell. Is there any other circuits or any other case that agrees with you? No other circuit precedent that has touched this, Your Honor, but the uranium watch decision, which is an unpublished district court decision in the Tenth Circuit, is also on point here on that. The Forest Service complied with NEPA. This Court should affirm. Thank you. Thank you, counsel. Kerry Shapiro. Good morning, Your Honors. May it please the Court. Kerry Shapiro with Jeffrey Mangels representing the Intervenor Corps. I'll first note that I, as the intervenors, we support the arguments raised by the Service today. In the limited time I have, I'm going to address just really one issue, I think, regarding the use of the multiple CEs and how the de minimis scope. Can we just confirm that you believe that this is just one proposed action here and not two? That's what the Forest Service position is. I believe that there is an action with a suite of activities that was proposed. It was the original application submitted by Corps for exploration and what you would, the way the discussion has gone, talk about immediate reclamation. We believe that was all that was required for this application. That was what the application was. It would, as proposed, fully comply with Categorical Exclusion 8. It would have been done within a year, including all of the reclamation. The only thing that was out there beyond that year was monitoring, but not monitoring that would require any actions. It was literally monitoring that every, I've been doing mining work for 30 years. But you would agree that both of those actions are one proposed action under the regulations? Because you didn't apply just for the one within the one year. You have the other part that you're talking about here that went on beyond that one year, but that's all part of the same proposed action. The Forest Service added on the concept of habitat improvement through the long-term monitoring that would trigger certain. . . Didn't Corps amend its proposal and submit a new proposal after the comment period? The application always comprised of the reclamation that would be done within a year, and then at the concept of long-term monitoring. The additional suite of activities for habitat restoration were requested by the Forest Service. And then included in your amended proposal, correct? Correct. They were included. Right. If I look at your reclamation bond estimate, you were proposing three years of monitoring and weed removal reseeding in that document, correct? Yep. So that was long-term monitoring was included in your proposal. Long-term monitoring is included in any reclamation. But you have to ask yourself this question that's foundational to this discussion, which is if any exploration project like this requires long-term monitoring, just monitoring, then what purpose does Categorical Exclusion 8 serve? What you're saying here is you can never have an exploration project comply with Categorical Exclusion 8. And I think you need to look at the language of Categorical Exclusion 8 to understand what is really going on here. Because we fit right within the parameters of Categorical Exclusion 8. It gives examples. That makes total sense. But your argument and the Forest Service argument is that it's one proposed action. If you argued that there's two proposed actions, you might have some purchase here. But you're arguing there's one action here. I would say, and what I was going to get to, is that it is harmless error in this instance to try to parse out one action versus two. Okay? It's harmless error because whether it was proposed as one action where the monitoring goes beyond a year, which would basically eliminate the concept of CE8 for mineral exploration, or it was two actions, meaning the project as we submitted, with short-term reclamation and then the management goals of the service being effectuated through a long-term habitat improvement, which is not reclamation. You've got to understand, reclamation ties down the land and makes it usable in the future. Improvement is... No, there is no extraordinary circumstances. And that's where I was getting to the harmless error. We have a project that clearly met the parameters of CE8. No extraordinary circumstances by definition, no significant impacts and no significant cumulative impacts by definition. You have long-term monitoring, long-term monitoring that adds on seeding and weeding, basically. They're going to sprinkle seeds and pull up weeds with hand tools. That's what the service added to hopefully improve sagebrush, sagebrush habitat for the grouse. That also fits squarely within CE6. No impact, no significant impact. What you're saying is right. Maybe help me understand how you would reconcile that with the discussion that was happening with your friend on the other side with respect to the mining regulations under 228 and the fact that, you know, he argued that you couldn't split these particular projects into two. You know, you couldn't actually have these two things go up as separate proposals. Understood. Venn diagram, 228, Part 228, big circle. Okay. CE8, small circle. Okay. You have to read these regulations together. If you read CE8, which is the expiration, as being coterminous with Part 228A, you eliminate CE8 because 228A would mean you could never comply with the one-year requirement of CE8. So to harmonize those two, you have to have the flexibility to say that those could be two actions for this project. I agree, but you haven't argued that, or at least the Forest Service hasn't. The Forest Service hasn't argued it. I'm trying to argue that you can interpret it that way. I agree. And that, you know, at most, it's what I would call a footfall by the service. Think about it. They're not trying to say, gosh, this project has too many impacts, and therefore we're going to split it. What they're saying is, your project is great. We're going to add something more to do to use your project as an opportunity to make that habitat for the grouse better, not reclaim. You want to start wrapping it up. Make it better. It's extra credit. It's bonus points using this project. And with the district court, they got it right. They said, look, that patchwork theory could lead to absurd results in some instances. That's not this instance. This instance is 0 plus 0 equals 0. Actually, it's not 0 plus 0 equals 0. 0 plus 0 equals negative 5. Negative 5 meaning you're getting a benefit by doing it this way. If they stuck just with CE8, you wouldn't have gotten those benefits. Thank you. Simon. Okay. Thank you, Your Honors. Roger Flynn again. We have some serious problems with the way the facts have just been presented, that the Forest Service added on all this new habitat restoration project when the decision memo came out. All of that reseeding, revegetation, hey, next year you've got to go back and check and revegetate and reseed if needed. That was in the original plan of operations, the only one the public saw. And then no one heard about a habitat restoration project. You won't see the word habitat restoration project until the decision comes out. Nobody knew about this. And to say – Counselor, can I ask a question? Yes, sir. How do you respond to the Forest Service's argument that under 220.6A2, because singular can be read as plural, that we should read it as the proposed action is within categories listed in D&E? Right. I think the issue is it has to fit in a category. That's what 220.6 says. I think the Mountain Community says that. The other cases – But there is that common statutory instruction or canon that singular can mean plural and plural can mean singular. Well, I guess in this case you could say that they could come up with other projects down the road, but they couldn't approve under the mining regulations. As we pointed out, 220.8 says – And wouldn't you agree that sort of the – I think the canon that the Forest Service is relying on says that you can have the singular apply to multiple things, but it doesn't transform every use of the singular into a plural. That would belie the plain language of the regulation. Right. I would agree the plain regulation would just be blown out of the water here. You know, it's interesting. That uranium watch case, I was involved in that case from the District of Utah 2010. Those were two separate projects. And we actually argued in that case that they were independently tied. They were dependent on each other. Under NEPA, they had to do a bigger environmental review. Forest Service argues, nope, independent utility. They are completely separate. So the District Court in Utah says, okay, they're completely separate. You can use a CE for – one was excavating a vent hole to clear out an old underground mine to get the uranium gas out. And then there was a totally separate one to explore for new uranium. That was under CE-8. And they got the reclamation done in a year. So the argument that it's physically impossible to meet CE-8 – first of all, the record doesn't show it here. They needed it here. It was in the reclamation. This is a very sensitive environment. How do you respond to CORE's argument that this is all harmless error? Well, you know, the District Court – well, the Justice Department's brief talked about harmless error. The error here is they didn't do an EA. And as we pointed out in reply, they have to – EA is a lot more than a CE. You have all these things you have to do. What about the District Court's finding is zero plus zero equals zero? Are you disagreeing with that as a factual matter? Well, what that means is you can violate the fundamental rule of NEPA and just chop projects up and say it's significant here. No, I think that's – I mean, if that's – I don't know, speaking to the panel, but that was an error, then we could say that's an error. But whether or not it's harmless in this case is a separate question. Right. We don't think it's harmless error to violate the regulation. The regulation is you have to consider all the incidental support activities. Usually a harmless error would say, no, there is extraordinary circumstance or something like that, or there is a harm to the sage grouse that was overlooked. Right. Well, by the definition when the CEA category was established, I think, in the early 90s, they specifically said basically the plain language is get everything done in a year and you can have a CE. And they raised that. When they said everything was – they vetted on, no, we pointed out once we got that plan with these multi-year reclamation activities, which they say is needed for satisfactory reclamation, we said, hey, wait a minute, you can't do that under case law. District of Arizona, no. The definition of a CE is in a category of actions which do not individually or cumulatively have a significant effect on the human environment. Yes, sir. So to show that there is an error here, I mean a harmful error, why can't you show that there was a significant effect? Well, we think – we pointed out that the test is whether it's uncertain if there's a significant effect. Right. And stuff. You know, it's interesting. The Justice Department's argument in response, I think it was to Judge Koh, is that, well, we have a backstop of the extraordinary circumstances. If we see these other projects coming along, we'll look at them together. But they say throughout their briefs, we will not look at cumulative impacts. By law in the Ninth Circuit, you don't have to look at cumulative impacts from other projects. We don't have much time to talk about that. But, you know, the case law in – from now Chief Judge Murgia in the Stahn case in 2008, Judge Marquez in the Defenders case in 2015, and the Salazar case, we would argue in that case that they didn't do a cumulative impact analysis. The district court said, you got to do one. It was the BLM. And then when they did it, we challenged that again, lost, went to the appeals court, went to the Ninth Circuit and the Salazar decision, and they specifically said, well, we're upholding this one because you did an appropriate – you factored in all appropriate factors, including cumulative impacts. So they have to do cumulative impacts, as we pointed out, in scoping. And now they're saying they're going to look at cumulative impacts as a backstop when they're going to violate their regulations. I mean, you have to look at the plain language of the regulations. The mining regulations say that they have to do reclamation. They have to do wildlife improvement. We're not against wildlife improvement. It's just they should have done an EA here. It just seems like it is an end run around the public review. And, you know, as far as – So can I ask you a question? In the mining regulations, which require reclamation, which they define as reshaping and revegetation of disturbed areas, does that include the long-term monitoring? Yes, because you have to – because as they said in the decision at 2, all of that monitoring and then checking and then revegetation is needed for successful, satisfactory reclamation. That's decision at 2 ER91. We agree with that. We agree that all this extra work – we support the extra work. What we don't support, and neither did Mono County, Mammoth Lakes, the California Fish and Game Department, Fish and Wildlife Department, excuse me, all said we're seeing this project, particularly due to all the impacts. And then once we submitted all those comments, then, you know, I don't know, six, eight months later, all of us said, oh, it's a habitat restoration project. We were blindsided by that, and so was everybody else. And, Your Honor, my time is up. And I just want – my last point is here. We appreciate the court expediting this case. The bulldozers, the drill rigs are rolling next week on September 1st. The groundwater, the drilling, puncturing the groundwater that feeds the springs, we didn't even get to that. It's going to start on September 1st. So we know you have a busy dock at those cases before me. We're mind-boggling. But I wouldn't want to be on that jury or in your shoes on those cases. But we ask that you vacate the Forest Service decision and do it as soon as practicable because, you know, the bulldozers and the drill rigs are rolling basically in a week. So with that, I appreciate your time today. Thank you, counsel. Thank you. Bye-bye. This case is submitted, and we are adjourned for this week.
judges: BUMATAY, KOH, DESAI